UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and UNITED ARTISTS FILMS INC., a Delaware corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DOES 1 - 2, | ) ) |
| Defendants. | ) ) |

Case No.: 1:05-cv-10739-DPW

## DECLARATION OF THOMAS MIZZONE IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

I, Thomas Mizzone, declare:

1.     I am Vice President, Data Services for MediaSentry, Inc. ("MediaSentry"), where I have been employed since March 2004.  MediaSentry is a provider of online anti-piracy services for the motion picture, music, game and business software, and print publishing sectors. Before my employment with MediaSentry, I held various senior level positions at companies that developed Internet based technologies and have approximately ten years of experience related to the protocols, technical architecture and operation of the Internet.

2.     I submit this declaration in support of Plaintiffs' Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.  This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

3.     MediaSentry has developed a technology platform that provides an effective means to detect unauthorized distribution of digital music, software, games, content, and movies over online media distribution systems, including the network known as BitTorrent.  At

MediaSentry, I am the head of the department that carries out evidence collection using a platform known as "MediaTarget." I work closely with our development team to create credible techniques to scan for, detect, and download copies of copyrighted material on multiple network protocols for use by copyright owners.

4.      MediaSentry was hired on behalf of Plaintiffs to monitor and identify copyright infringement of specified motion pictures on the BitTorrent network. Under direct supervision of Plaintiffs counsel, MediaSentry engaged in a specific process utilizing specially designed software and other technology to identify direct infringers of Plaintiffs' copyrights on the BitTorrent network.

5.      Plaintiffs provided MediaSentry with a list of copyrighted motion pictures they believe may be offered for distribution on online distribution systems.

6.      MediaSentry searches for "Torrent" files containing titles of the Plaintiffs' specified motion pictures. A "Torrent" file can be thought of as a "pointer" file for the BitTorrent network. The Torrent file contains among other data the name of the file being shared and the IP address of a "Tracker" server. A "Tracker" server is a server that coordinates between users sharing the same file with each other on the BitTorrent network. MediaSentry uses the same core technical processes that are used by BitTorrent users to locate the Torrent files indicating Plaintiffs' motion pictures on the Internet. Any user of the BitTorrent network can obtain any of the information that is obtained by MediaSentry from the BitTorrent network.

7.      Once MediaSentry's searching software program identifies a Torrent file indicating one of the specified motion pictures being offered for download, it connects to the corresponding BitTorrent Tracker server to request the Internet Protocol ("IP") addresses of a user offering the file for download. Any user of the BitTorrent network can request the same information of the Tracker server as that information obtained by MediaSentry. MediaSentry then downloads the motion picture file and determines that a substantial portion of the file came from the user.

2

8.    In addition to the file of the motion picture itself, MediaSentry downloads other publicly available information from the network user that is designed to help Plaintiffs identify the user. Among other things, MediaSentry downloads or records for each file downloaded from each user: (a) the time and date at which the file was downloaded from the user; and (b) the IP address assigned to each user at the time of infringement. MediaSentry then creates evidence logs for each user that store all this information in a central database.

9.    An IP address is a unique numerical identifier that is automatically assigned to a user by its Internet Service Provider ("ISP") each time a user logs on to the network. Each time a subscriber logs on, he or she may be assigned a different IP address. ISPs are assigned certain blocks or ranges of IP addresses. ISPs keep track of the IP addresses assigned to its subscribers at any given moment and retain such "user logs" for a limited amount of time. These user logs provide the most accurate means to connect an infringer's identity to its infringing activity.

10.    Users' IP addresses are conveyed upon request by the Tracker servers on the BitTorrent network. In addition, any user's IP address is carried within the packets of information that they are distributing. In the case of the BitTorrent network, users connect directly to each other. This enables a user's IP address to be determined during the exchange of data. After we are given the IP address of a user with infringing content by a Tracker server, we connect to that user. Once we have connected to the user, a commercially available "socket control" establishes and maintains the session for the exchange of data. A "socket" can be thought of as the interface for the exchange of data. A "socket control" is a software program that allows a one to interact with and control the socket connection. Because we establish and maintain the session directly with the user, at the socket level of the session, we are able to verify the user's IP address directly from the packets of data originating from the user.

11.    An infringer's IP address is significant because it is a unique identifier that, along with the date and time of infringement, specifically identifies a particular computer using the Internet. However, the IP address does not enable MediaSentry to ascertain with certainty the exact physical location of the computer or to determine the infringer's identity. It only enables

MediaSentry to trace the infringer's access to the Internet to a particular ISP and, in some instances, to a general geographic area. Subscribing to and setting up an account with an ISP is the most common and legitimate way for someone to gain access to the Internet. An ISP can be a telecommunications service provider such as Verizon, an Internet service provider such as America Online, a cable Internet service provider such as Comcast, or, as is the case here, even an entity such as a university that is large enough to establish its own network and link directly to the Internet.

12.     Here, the IP addresses identified by MediaSentry via the use of a socket control enable us to determine which ISP was used by each infringer to gain access to the Internet. Publicly available databases located on the Internet list the IP address ranges assigned to various ISPs. However, some ISPs lease or otherwise allocate certain of their IP addresses to other unrelated, intermediary ISPs. Since these ISPs consequently have no direct relationship -- customer, contractual, or otherwise -- with the end-user, they are unable to identify the Doe Defendants through reference to their user logs. The intermediary ISPs' own user logs, however, should permit identification of the Doe Defendants.

13.     Through a socket control, MediaSentry determined that the Doe Defendants here were using Boston University to gain access to the Internet and distribute and make available for distribution and copying the copyrighted motion pictures identified. MediaSentry downloaded the motion picture file and other identifying information described above and created an evidence log for each Doe Defendant. Once MediaSentry identified the ISP used by the Doe Defendants to gain access to the Internet from the IP address, Plaintiffs' counsel, using the MediaSentry application, sent an e-mail to the relevant contact at Boston University informing Boston University of the Doe Defendant's IP address and the date and time of the infringing activity. That e-mail message requested that Boston University retain the records necessary to identify its subscriber who was assigned that IP address at that date and time. Once provided with the IP address, plus the date and time of the infringing activity, the Doe Defendant's ISP

quickly and easily can use its subscriber logs to identify the name and address of the ISP subscriber who was assigned that IP address at that date and time.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on _April 21_ , _2005_ , at _Bernardsville, NJ_ .

Thomas Mizzone